## Court of Appeals.

*January*, 1889.

## PEOPLE *v.* BLIVEN.

ABORTION.—INDICTMENT AND PROOF.—ABSENT DEFENDANT AIDING IN AND ABETTING CRIME.—PENAL CODE, §§ 29, 294.—CODE CRIM. PROC. §§ 275, 284.

Upon an indictment which alleges the doing of an act by the defendant constituting the crime, he can be convicted upon proof that, though absent at the time of its actual commission, he nevertheless aided in, advised, and procured its commission (*Penal Code,* § 29).

Appeal by defendant, Cortlandt H. Bliven, from a judgment of the General Term of the Supreme Court in the Second Department of February 13, 1888, affirming a judgment of the Court of Sessions of Kings County, Hon. HENRY A. MOORE, County Judge, presiding, of October 17, 1887, entered upon the conviction of defendant of abortion.

The appellant was tried separately, and was convicted and sentenced to imprisonment for three years and six months.

The indictment in this case was as follows:—

"The Grand Jury of the County of Kings, by this indictment, accuse Cortlandt H. Bliven, Nellie Wood and Marie Jann of the crime of abortion, committed as follows:

"The said Cortlandt H. Bliven, Nellie Wood and Marie

Jann, late of the City of Brooklyn and County of Kings, on the third day of May, in the year of our Lord one thousand eight hundred and eighty-seven, with force and arms, at the city and county aforesaid, in and upon one Frances Bell, willfully, knowingly, and feloniously, and with intent to unlawfully procure the miscarriage of her, the said Frances Bell, did make an assault.

"And they, the said Cortlandt H. Bliven, Nellie Wood and Marie Jann, did then and there, on the day and year aforesaid, at the city and county aforesaid, unlawfully, willfully, knowingly and feloniously use and cause to be used upon her, the said Frances Bell, a certain instrument, to wit, a syringe, that is to say, the said Cortlandt H. Bliven, Nellie Wood and Marie Jann, did then and there willfully, unlawfully and feloniously insert said syringe and a certain portion thereof (said syringe being then and there filled with and containing a quantity of hot water) into the vagina and womb of her, the said Frances Bell, and did then and there inject a certain portion of said hot water from said syringe into the womb of her, the said Frances Bell, with intent thereby feloniously and unlawfully to procure the miscarriage of her, the said Frances Bell, the same not being then and there necessary to preserve the life of her, the said Frances Bell, or of the child of which she was then and there pregnant, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity."

The facts are not necessary to be given, the question raised upon the appeal being one of law.

*Abraham Suydam*, for defendant, appellant.

The question presented by this appeal is whether one indicted as a principal in a felony may be convicted upon proof of acts which would have made him an accessory before the fact, prior to the enactment of the Penal Code. The question to be determined is whether the legislature, in enlarging the definition of the word "principal" in cases of

felony, intended to change what had always been the rules of pleading and proof in felonies.

In sections 275 and 284 of Code Crim. Proc., it is provided that the indictment shall contain "a plain and concise statement of the act constituting the crime," and that "the act or omission charged as the crime" shall be plainly and concisely set forth.

The word "act" here means the actual physical act charged to have been done, and does not in any sense mean the legal quality or consequence of the act. Justice requires that the accused shall be informed whether he is charged with the actual perpetration of the crime itself, or with inducing or procuring another to commit it.

When the distinction in name between principals and accessories was abolished, it was not intended to relieve the prosecution from the necessity of charging in the indictment the very thing which the people intend to prove that the accused actually did, and upon which they intend to rely in order to convict him as a principal.

This has been so decided in the States whose Codes most closely resemble our own. People *v.* Swartz, 32 *Cal.* 160; People *v.* Trim, 39 *Id.* 75; People *v.* Campbell, 40 *Id.* 142; People *v.* McGonigle, 41 *Id.* 49; People *v.* Outerveras, 48 *Id.* 19. In consequence of these decisions, the Legislature of California adopted an amendment to section 971 of their Code of Criminal Procedure, dispensing with the necessity of the setting up the advising, commanding, etc. We have no such provision in our Code. See also State *v.* Richer, 29 *Me.* 84; Josephine *v.* State, 39 *Miss.* 613.

The decisions in other States are not entirely uniform, but the question has been settled in this State. People *v.* Blanchard, 90 *N. Y.* 320; People *v.* Dumar, 106 *Id.* 502.

The principle laid down in the latter case is that when the definition of a crime is enlarged by a statute so as to include acts which did not previously constitute that crime, the indictment must be enlarged accordingly, and the very acts done must be specifically charged if the people

intend to ask for a conviction upon proof of acts which were not within the former definition.

It does not help the respondent's case that the indictment uses the words "use and cause to be used" for two reasons. First. The words "cause to be used" apply only to the general allegation that they used a syringe. When the pleader proceeds to charge the manner in which it was used the word "cause" is dropped and all the defendants are charged with the actual use. Second. The word "cause" itself is too vague and uncertain to specify any of the acts which, according to section 29 of the Penal Code, make him who does them the principal.

*James W. Ridgeway*, district attorney, *John F. Clarke*, assistant, for the people, respondent.

Upon appeal to the General Term of the Supreme Court the following opinion was written :

BARNARD, P. J.—Before the Criminal Code was passed, an accessory to a crime before the fact could not be indicted as principal. It was only a form of criminal pleadings and procedure, however, as the punishment was the same as if the accessory had been a principal. 2 *Rev. Stat.* 699, § 6.

The evidence to prove guilt was the same, except that the conviction of the principal had to be proven in order to convict an accessory before the fact. The procedure was cumbrous, and there was never any good reason why the person who committed a crime by means of another when he was not actually present should not be deemed a principal. The Penal Code made a different rule. It provided that a person who committed the act, and the person who aided and abetted its commission, whether present or absent, were both principals. Section 29.

The indictment in this case is for the unlawful procuring of a miscarriage upon the person of a pregnant woman under section 294 of the Penal Code.

The defendant and two others were charged as principals in doing the act complained of, and it appears, by the testimony, that the appellant procured the other defendants to actually use the means which were designed to, and did, produce the miscarriage. The section of the Penal Code (29) having made all principals as in cases of misdemeanor before the Code, the rule now is that all who procure the commission of felonies, whether present or absent, are principals, and should be indicted as such.

The case of People *v.* Dumar (106 *N. Y.* 502) is not an authority for the appellant upon the question raised. In that case a defendant had been indicted for stealing, taking, and carrying away property. The court held that he could not be convicted of obtaining the same by false pretenses, although by the Penal Code both offenses were made grand larceny.

The facts charged, and those proven, were so different as to be a matter of substance, and not of form. The pregnant woman referred to in the indictment was not an accomplice within the decision of the case. The testimony of the witnesses Shield and Erwin was not objected to, and, morever, was proper.

The accused had called one Mrs. Wood as a witness, who gave testimony tending to show facts favorable to him. Upon cross-examination they were asked specific questions tending to show admissions and statements to the witnesses Shield and Erwin, which were not at all in harmony with the testimony on the trial. It was within the strict rule which governs the impeachment of a witness. The charge of the judge took nothing from the jury. He stated that the complaint was a grave one, but distinctly left it to the jury to find the facts upon which a conviction was claimed, and accompanying a direction to them that they could not find guilty unless guilt was proven.

The conviction should be affirmed.

PRATT and DYKMAN, JJ., concur.

The following is the opinion of the Court of Appeals:

PECKHAM, J.—Section 294 of the Penal Code provides as follows: "*Abortion Defined.* A person who, with intent thereby to procure the miscarriage of a woman, unless the same is necessary to preserve the life of the woman, or of the child with which she is pregnant, either (1) prescribes, supplies, or administers. to a woman, whether pregnant or not, or advises or causes a woman to take any medicine, drug, or substance; or (2) uses, or causes to be used, any instrument or other means,—is guilty of abortion, and is punishable by imprisonment in a state prison for not more than four years, or in a county jail for not more than one year."

Under that section the defendant was indicted by the grand jury of the county of Kings for having feloniously, etc., used a certain instrument upon the prosecutrix, with intent thereby feloniously and unlawfully to procure her miscarriage; the same not being then and there necessary to preserve her life, or that of the. child with which she was pregnant.

The proof in the case showed that at the time of the commission of the act the defendant was absent, but that he had counseled, induced, and procured the crime to be committed. The question was properly raised on the trial, and the claim was made on the part of the counsel for the defendant, that he could not be convicted of the crime alleged in the indictment, because the proof showed that he was absent at the time of its alleged commission, and hence there was not, within the meaning of the Code, a sufficient allegation in the indictment of the facts constituting the crime as proved. The objections were overruled, and the defendant was convicted and sentenced. Upon appeal the conviction was affirmed by the general term of the Supreme Court, and from the judgment of affirmance the. defendant appealed here.

The question is here fairly presented whether, upon an indictment which alleges the doing of an act by the defend-

.ant constituting the crime, he can be convicted upon proof that, though absent at the time of the actual commission of the crime, he nevertheless aided in, advised, and procured its commission.

Before the adoption of the Code, and in cases of felony, there would have been no doubt that a conviction could not be had upon an' indictment such as this, where the proof was the same as in this case. It is claimed, however, that section 29 of the Penal Code works a change in the law upon this subject. That section is as follows: "A person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces, or procures another to commit a crime, is a principal."

It is now argued that by reason of this section the rule of law has been changed, and that, upon an indictment alleging that the defendant committed the crime named in the indictment, he may be convicted upon proof that, though absent, he advised and procured its commission. The purpose and effect of the section are to abolish the distinction which heretofore existed in cases of felony between a principal and an accessory before the fact; the principal being present, and either committing the act himself, or aiding in its commission, and the accessory before the fact being absent, but counseling and procuring its commission. The case of an accessory before the fact has now, by means of this section, been made the case of a principal, and he occupies, therefore, the same position in the case of felony as such an individual heretofore occupied in cases of treason and of misdemeanor.

In treason, it has always been the law that there were no accessories, either before, or, with one or two minor exceptions, after the fact. 1 *Hale P. C.* 233; 1 *East P. C.* p. 93, § 35; 1 *Bish. Crim. Law,* § 681; 1 *Whart. Crim. Law,* § 131. In regard to misdemeanors, the same rule obtains, and, when one sustains in misdemeanor a relation

which in felony would make him an accessory before the
fact, he is treated as a principal, and the indictment charges
him as such, and, unless the pleader chooses, it does not
mention that the act was committed by another.  1 *Bish.
Crim. Law*, §§ 685, 686.  The rule, therefore, in cases of
felony, can scarcely be said to exist simply because of the
greater gravity of the offense charged; ·for as it does not
exist in treason, which, according to the English law, is the
highest crime known to it, the gravity of the charge cannot
be the reason for its existence in cases of felony.  It is
somewhat difficult to comprehend the reason for the differ-
ence in the rule between cases of treason and misdemeanor
on the one hand, and felony on the other; nor can the
smallness of the offense in ˙cases of misdemeanor be the
reason for the existence of the rule.  For by the common
law many cases which are made felony in this country by
statute were but misdemeanors; the punishment, however,
in many of them extending to long terms of imprisonment,
and also to the infliction of corporal punishment.

As late as the case of Reg. *v.* Greenwood, 9 *Eng. Law
& Eq.* 535, which was a case where the prisoner was indicted
for uttering counterfeit coin, the crime being a misdemeanor,
the rule was applied.  The indictment in that case charged
the prisoner with knowingly uttering a counterfeit shilling.
The proof was that it was uttered by another person in the
absence of the prisoner, and the court held that the prisoner
was properly convicted under the indictment.  The con-
viction was held good, on the ground that the proof showed
that the prisoner, although absent when the coin was uttered,
was engaged in the common purpose of uttering counterfeit
shillings, and, the act of uttering the coin in question having
been procured and aided by the prisoner, the case stood the
same as if it were his own act.  Five judges delivered
opinions *seriatim*, and, although they are exceedingly brief,
the case shows that it was carefully examined, and must be
regarded as high authority upon the question decided.

Another case is that of Reg. *v.* Clayton, 47 *E. C. L.* 128.

The indictment charged the prisoners with an attempt to set fire to a certain malt-house, and they were jointly charged in the indictment with having made such attempt. The proof showed that Mooney was not present when the other prisoner lighted the fire, but it tended also to show that though absent, she knew beforehand that the fire was to take place. The question was raised on the part of the prisoner, Mooney, that she could not be convicted under the indictment, as it charged her with the actual attempt to burn the malt-house, while the proof showed that she was absent, although privy to the act. The objection was over-ruled, and it was stated by the learned judge in summing up, that in misdemeanors and in treason all who take part in the crime are principals, and that the prisoner, Mooney, might be convicted under the indictment, which alleged that she herself attempted the crime, if, though absent, the jury believed that she counseled and encouraged the other prisoner to set the fire.

The same rule has been held to exist in this State. In Ward v. People, 6 *Hill*, 144, the indictment charged the prisoner with having stolen twenty-five pounds of butter. On the trial he gave evidence tending to prove that he did not himself steal the butter, but sent another person to steal it, and that they afterwards divided it between them; and he requested the court to charge the jury that if the butter was thus stolen he was simply an accessory, and could not be convicted as a principal for the crime of petit larceny. The court refused, and charged that if the other person stole the butter in the prisoner's absence, by his advice and procurement, he might be convicted under the indictment as a principal, as there were no accessories in petit larceny. The Supreme Court held the conviction proper (see Ward v. People, 3 *Hill*, 395), and the conviction was affirmed by the court of errors; Chancellor WALWORTH writing the opinion. The doctrine was there stated that those who procure, aid, or advise in the commission of the offense of petit larceny

are principals, and that the same rule obtains in cases of treason.

In England, by the statute 11 & 12 Vict. c. 46, § 1, for the purpose, as is stated in the preamble, of relaxing the technical strictness of criminal proceedings, and to insure the punishment of the guilty without depriving the accused of any just means of defense, it was enacted that, "if any person shall become an accessory before the fact to any felony, whether the same be a felony at common law or by virtue of any statute or statutes, made or to be made, such person may be indicted, tried, convicted, and punished in all respects as if he were a principal felon." The same provision is reiterated in 24 & 25 Vict. c. 94, § 1.

It would seem that the provisions of these statutes established the same rule in cases of felony as in cases of treason and misdemeanor, and that an indictment against a person who before the statute would have been regarded as an accessory before the fact in a case of felony would now charge the crime against him in precisely the same manner as if he were a principal felon; and a person charged with the commission of a felony would, under those statutes, be convicted on proof showing him guilty as an accessory before the fact. It has indeed been so decided.

In the case of Reg. v. Manning, 2 Car. & K. 892, at 904, 61 E. C. L., same pages, it appeared that two persons who were husband and wife were charged as principals in the crime of murder. The recorder of London, in his charge to the grand jury, with reference to the case, said: "The material question in this case is whether this woman has taken such a share in the transaction as to make her an accessory before the fact, or whether she was present when the crime was actually committed, in either of which cases she will be liable under the statute 11 & 12 Vict. c. 46, § 1, to be indicted as a principal in the murder. It will be for you to consider, therefore, whether there is any evidence of a counseling or procuring the murder to be committed by either of the parties accused, and more particularly by the

woman. . . . The indictment will probably charge both these persons, husband and wife, as principals in the commission of the crime of murder, charging them as the actual perpetrators of the crime, and, by the statute to which I have referred, both classes of offenses, namely,—that of an accessory before the fact and that of a principal,—may now be dealt with alike in the mode of indictment and trial; and proof of the party being either an accessory before the fact, the perpetrator of the crime, or that he was present, aiding and abetting in the commission of it, will support an indictment charging him as a principal."

Under these circumstances the question arises whether it was not meant by the passage of section 29 of the Penal Code to place a person who in cases of felony would otherwise have been guilty as an accessory before the fact, under the same rule as had theretofore obtained in cases of treason and misdemeanor. The general rule of law is, as stated by Mr. Bishop, that what one does through another's agency is to be regarded as done by him. 1 *Bish. Crim. Law,* §§ 656, 673, 682. If the case were a civil one, a pleading which alleged the doing of an act by the defendant would be sustained upon proof of the doing of the act by his agent, or by any one whom he advised or requested to do it, and it is difficult to see why, under an indictment charging the defendant with the commission of a crime, proof showing its commission by one whom he advised and procured to do it would not prove his own guilt of the act charged.

By section 275 of the Code of Criminal Procedure it is enacted that the indictment must contain a plain and concise statement of the act constituting the crime without unnecessary repetition; and by section 284, subdivision 7, it is stated that the indictment is sufficient if the act or omission charged as a crime is stated with such a degree of certainty as to enable a court to pronounce judgment upon conviction according to the rights of the case.

Here the act constituting the crime was the insertion of

an instrument in the body of the prosecutrix, and thereby procuring an abortion. That act was plainly charged against the defendant, and in order to prove it evidence was given of the commission of the act by another, by the defendant's advice and procurement, but in his absence. The act that rendered him guilty is charged in the indictment, and it was not a case of variance between the crime as charged and the proof as made.

We think the case of People v. Dumar, 106 N. Y. 502, has no application. The indictment in that case charged the defendant with the crime of grand larceny in unlawfully stealing and carrying away the property described. The proof was that the defendant obtained possession of the property from the owner by sale upon credit induced by false and fraudulent representations. We held that there was a variance between the proof and the indictment, and that the defendant was left uninformed of the real act committed by him. There was no question in that case in regard to the act charged having been done by a third person in the absence of the defendant, but by his act and procurement. The crime charged was a totally different one from that which the facts proved, although both were grand larceny. The indictment, however, charged one set of facts as constituting grand larceny, and the proof was of a totally different set of facts, which by the Code also constituted grand larceny. The difficulty was that the crime as charged was not proved, and the crime as proved was not charged. Here, as it seems to us, the crime was clearly and properly charged, and the proof shows the defendant to have been guilty of the very act with the commission of which the indictment charged him. It was proved by showing that the act, although committed by a third person, and in the absence of the defendant, was so committed by his aid and procurement, and in that way, in law and in morals, and in good sense, he committed the act himself.

This question has been raised in some of the other states, where provisions somewhat similar to the section of our

Penal Code have been in existence for some years. The case of People *v.* Outeveras, 48 *Cal.* 19, is one which arose under the California statute, which somewhat resembles ours. The prisoner was indicted for the crime of burglary in breaking and entering a dwelling-house in the day-time intending to commit larceny. The proof showed that the entry was made by another than the prisoner, but pursuant to an arrangement with him, and he being near by the house at the time of the entry, and aiding and abetting it. The facts showed that he might have been regarded as a principal in the second degree,—as one who stood by and aided and abetted the commission of the act. But the court regarded the question in the same manner as if the proof had shown that the prisoner was absent at the time of the commission of the act, but that he had counseled and procured its commission.

The California statute is as follows : " An accessory is he or she who stands by and aids, abets, or assists, or who, not being present, aiding, abetting, or assisting, hath advised or encouraged, the commission of the crime. He or she who thus aids, abets, or assists, advises or encourages, shall be deemed and considered as principal, and punished accordingly." The court held that under the indictment charging him with the commission of the act the prisoner could be convicted by proof that he was present aiding and abetting, or absent, and advising and procuring its commission. This case substantially overrules the case of People *v.* Campbell, 40 *Cal.* 129, and that of People *v.* Trim, 39 *Cal.* 75, and states, as we think, the better rule on the subject.

In Illinois the same view has been taken of a similar statute. By the thirteenth section of the Criminal Code of Illinois it is declared that " an accessory is he or she who stands by, and aids, abets, or assists, or who, not being present, aiding, abetting, or assisting, hath advised and encouraged, the perpetration of the crime. He or she who thus aids, abets, or assists, advises or encourages, shall be deemed and considered as principal, and punished accordingly."

The effect of this section came before the Supreme Court of Illinois for decision in the case of Baxter *v.* People, 3 *Gilman*, 368. The prisoner was indicted for murder, and the proof tended to show the he was not present at the time of the commission of the crime, but had advised and procured its commission, and it was held that the section of the Criminal Code above quoted had abolished the distinction between accessories before the fact and principals; and that, as accessories before the fact were by such section to be deemed as principals, and punished accordingly, they should be indicted as principals.

In Dempsey *v.* State, 47 *Ill.* 323, the same question again came before that court; the prisoner having been indicted for murder, and the proof showing that he was guilty as accessory before the fact. The court stated: " It is contended that in such a prosecution the prisoner should have been indicted as an accessory before the fact, and, having failed to do so, the people should be precluded from establishing his guilt in that mode. Our statute declares an accessory before the fact to be a person who stands by, and aids, abets, or assists; or who, not being present, aiding, abetting, or assisting, hath advised and encouraged the perpetration of a crime; and that a person thus aiding, abetting, or assisting, who advises or encourages, shall be deemed a principal, and punished accordingly. The statute having declared such persons principals, no reason is perceived why they may not be indicted as such." The court then referred to the case of Baxter *v.* People, *supra,* and added: " These cases are decisive of the question. Nor do we see any sufficient reason to overrule those cases. They have long stood unshaken as the law of the land, and, unless we could perceive some great and urgent necessity for their being overturned, we are not inclined to overrule or shake their authority." See also Spies *v.* People, 122 *Ill.* 1, 101, 242.

The statute of Michigan abrogates the distinction between an accessory before the fact and a principal, and all who would be accessories before the fact at common law are

to be indicted, tried, and punished as principals. Another statute provided that if the father or mother of any child, or any other person to whom it was confided, exposed it with intent to abandon, such person was to be punished as therein provided. The prisoner, who was neither the father, mother, nor person to whom the child had been confided, was indicted as a principal under the statute. The proof only showed that he had counseled and aided and abetted the act of abandonment, but was not present when it was committed. The court held that where the prisoner could not be guilty of the substantive or main offence whose commission he aided,—that is, where it was a legal impossibility for him to commit it,—that in such case the aiding and abetting was the principal offense, and he must be indicted as having committed that specific offense, and the indictment must charge the acts of aiding and abetting. This is the principle decided in Shannon *v.* People, 5 *Mich.* 71. It does not touch the point in this case.

In Smith *v.* State, 37 *Ark.* 274, the question is briefly discussed, and decided in accordance in with the defendant's claim here, chiefly on the authority of the two cases in California (People *v.* Trim, 39 *Cal.* 75 ; People *v.* Campbell, 40 *Id.* 129) ; but the authority of such cases is overturned by the later case cited in the same State, of People *v.* Outeveras, 48 *Cal.* 19.

The statute of Arkansas is somewhat peculiar. An accessory before the fact is defined by the Revised Statutes of that State (*Rev. St.* § 2, p. 248), and it is declared that " he who thus aids, assists, abets, advises, or encourages shall be declared in law a principal, and be punished accordingly." In Williams *v.* State, 41 *Ark.* 173, the court simply said that accessories before the fact are punishable as principals, but must be indicted as accessories ; and referred to the former case of Smith *v.* State, *supra.*

We are inclined to agree with the English rule, and with the reasoning of the learned judges of California in the latest cited case, and with those of Illinois. The court

in Michigan does not hold any contrary doctrine. When
we remember that the distinction taken between an acces-
sory before the fact, and a principal does not exist either in
cases of treason or misdemeanor, and that in England,
where the distinction had its origin, cases of misdemeanor
were sometimes of very grave character, involving impris-
onment for years, and that the reason for the existence of
the distinction in cases of felony is neither very clear nor
very satisfactory as given by the older writers, Blackstone
and Coke, we cannot fail to be impressed with the view
that the legislature of this State in abolishing the distinc-
tion, and in making an accessory before the fact a principal
in cases of felony as well as in cases of misdemeanor, meant
to make the law in regard to the statement of the offense the
same, in all cases; and that what would be a proper indict-
ment in a case of ordinary misdemeanor, as held by our courts
for a long number of years, would be a proper one in a case
of felony. Where the statute, in defining what constitutes
a principal in the commission of a crime, includes one who
counsels its commission, although absent at that time, we do
not lay any stress on the presence or absence of a provision
that he shall be indicted or punished as such. If he is made
a principal, we think it follows that it would be proper to
so indict him, unless, indeed, in such a case as the one in
Michigan, where the only offense that the defendant could
commit was the substantive and separate one of advising
the commission of the principal offense.

The kind of pleading of which this indictment is an ex-
ample receives the unqualified approval of Mr. Bishop,
whose ability as a writer on the subject of criminal law is
admitted by all. 1 *Bish. Crim. Law*, § 682. We think
we are treading in the same direction that the Legislature
intended by the passage of the Penal Code and the Code of
Criminal Procedure. The tendency of modern thought, as
exhibited in criminal legislation, is to free the practice from
mere technicalities, and to bring the trial of the indictment
the very merits of the issue between the people and the de-

fendant, and in the plainest and least formal style. The only objection that could be urged against an indictment in this form is the possibility of misleading the defendant as to the nature or character of the act of which he is accused. It was that objection that seemed so weighty in the eyes of that most learned and able judge, Chief Justice MARSHALL, as we learn from his views expressed upon that point in the trial of Aaron Burr for treason, although at the same time he admitted the existence of the rule. See 4 *Cranch*, 469, 497.. But upon reflection we think the objection is more fanciful than real, and if it be understood that upon an indictment of this nature a man may be convicted upon proof, not only of his doing the act with his own hand, but upon proof that he advised and procured another to do it, and thus did it himself, we think no man will suffer any real inconvenience or any injustice from such a rule.

The general policy throughout this country and England runs in favor of more liberal views at the present time in regard to the treatment of those technicalities which formerly existed as obstructions in the path of the enforcement of the criminal law. That policy is shown by the passage of such acts as have been cited, as well from England as from other States of the Union. It was stated in the English statute, which made the alteration already referred to, that it was made " to insure the punishment of the guilty, without depriving the accused of any just means of defense;" and we think that the abolition of all distinction between principals in the first and second degree and accessories before the fact does tend in that direction. By holding this indictment to be insufficient to admit proof of the defendant's guilt by reason of his procuring and advising the act to be done, instead of doing it himself, we think we should be taking a step backwards in regard to the proper rules which should obtain in criminal pleadings, and that our decision would be at war with the general policy which led to the adoption of the Penal Code, and especially at war with the sections of the Code already quoted.

We think that no injustice has been done, that the indictment was sufficient to permit the proof given, and that the defendant was legally convicted of the crime charged.

The judgment should be affirmed.

All concur.