**UNITED STATES of America**

v.

**Regis Gary TORNABENE, Appellant.**

**UNITED STATES of America**

v.

**Jacob Joseph CAPLAN, Appellant.**

**Nos. 11402, 11476.**

United States Court of Appeals
Third Circuit.

Argued Feb. 25, 1955.

Decided June 7, 1955.

Elliott W. Finkel, Pittsburgh, Pa. (David Roth, Kaplan, Finkel & Roth, Arthur H. Thompson, Pittsburgh, Pa., on the brief), for appellants.

W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa. (John W. McIlvaine, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Regis Gary Tornabene and Jacob Joseph Caplan have appealed judgments of conviction entered against them after separate trials in the Federal District Court for the Western District of Pennsylvania. The appeals are treated in one opinion since an identical question of law governs our decision in both cases.

Both appellants moved to quash their respective indictments for failure to state an offense. Each appellant contends that the refusal to quash the indictment was error.

Caplan's indictment contained six counts. He was convicted on the first five counts and acquitted on the sixth. Tornabene was indicted and convicted on ten counts. Count 1 of the Caplan indictment, which is typical [1] in all essen-

---

1. The five counts of the Caplan indictment differ only as to names and dates because each count concerns a separate transac-tion. The first nine counts of the Tornabene indictment are also identical in all respects except for different transactions.

tial respects to all counts in both indictments, reads as follows:

"The Grand Jurors charge:

"1. That on the dates specified in the second paragraph of each of the counts of this indictment, at Cecil, in the County of Washington, in the Western District of Pennsylvania, one John Felix Wagner, deceased, who is not indicted and who is not a defendant herein, was an officer, agent and employee, to wit, Vice-President and Cashier, of the First National Bank in Cecil, Cecil, Pennsylvania, a national bank, which said national bank had been theretofore created, organized and established, and was then and there existing and conducting the business of banking under the laws of the United States at Cecil, Pennsylvania, and defendant Jacob Joseph Caplan, having aided and abetted the said John Felix Wagner, deceased, who is not indicted and who is not a defendant herein, in committing an offense against the United States, is a principal herein under the provisions of Section 2 of Title 18 of the United States Code.

"2. That on and about the 6th day of June, A.D.1950, at Cecil, in the County of Washington, in the Western District of Pennsylvania, the said Jacob Joseph Caplan, being a principal defendant herein, as heretofore set forth, unlawfully, knowingly and fraudulently, and with intent to injure and defraud said national bank, did willfully misapply certain of the moneys, funds and credits of said national bank to the amount and value of $3,-187.33 in the manner and by the means following: The said John Felix Wagner, deceased, who is not indicted and who is not a defendant herein, being then and there Vice-President and Cashier of said na-

tional bank as aforesaid, and by virtue of the power, control, direction and management which the said John Felix Wagner possessed over the affairs of said national bank, and the said Jacob Joseph Caplan, being a principal herein, did then and there pay and cause to be paid from and out of the moneys, funds and credits of said national bank a certain check No. 160, dated May 30, 1950, in the amount of $3,187.33, drawn on said national bank by Jacob J. Caplan, payable to the American Steel and Wire Company, said check being made out on a check form of the National Paper and Supply Company, being a company operated by said defendant and others, the account being carried in and with said national bank as 'Caplan's, Jacob J. or David B. Caplan'; that is to say, the said check in the amount of $3,187.33 was presented to the National City Bank of Cleveland, Ohio, and was returned to said national bank for collection by the Pittsburgh Branch of the Federal Reserve Bank of Cleveland in a remittance letter dated on or about June 2, 1950, and which said check was not on said date, to wit, June 6, 1950, or any subsequent date, charged against the account of Caplan's, Jacob J. or David B. Caplan, in and with said national bank, which said account at that time did not have sufficient credit balance to cover and pay same, and the said national bank was not secured, repaid or reimbursed in any manner whatsoever for the repayment of said check; and thus and in the manner aforesaid, the said sum of $3,187.33 was wholly withdrawn from and lost to said national bank, and the said moneys, funds and credits were then and there appropriated and converted to the use, benefit and advantage of the said de-

---

The tenth count of the Tornabene indictment is a false entry charge, 18 U.S.C. § 1005, but since this crime is also limited to a designated class into which Tornabene does not fall, the same reasoning applies as to the other counts.

fendant and divers other persons to the Grand Jurors unknown, all of which he, the said defendant, then and there well knew. (Section 656, Title 18, U.S.Code.)"

The government contends that the above can be read to charge either a violation of Section 656, Title 18, U.S.C.[2] or a violation of Section 2(a), Title 18 U.S.C.[3]

We will first consider whether Count 1 charges a crime under Section 656. That section distinctly limits the class of persons who can violate its provisions, i. e., officers, directors, agents, employees, etc. See United States v. Weitzel, 1918, 246 U.S. 533, 38 S.Ct. 381, 62 L.Ed. 872. The government concedes this much. It is not alleged that either Caplan or Tornabene fall within any of the designated classes. But this does not end the matter, according to the government.

The government says that since Section 2(a) is not confined to a limited class, both Caplan and Tornabene were capable of aiding and abetting in a violation of Section 656. So far, the government is correct, Coffin v. United States, 1895, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481, and with this phase of the government's theory, the appellants agree.

The government then argues that if A can commit a crime by aiding and abetting B in doing an act, it is sufficient to indict A for doing the principal act, even if at trial the proof shows that A only aided and abetted in the commission of the act which constituted the crime. As an abstract principle, this is good law, and we have been referred to many cases relied upon by the district court and cited by the government, i. e., United States v. Klass, 3 Cir., 1948, 166 F.2d 373; Von Patzoll v. United States, 10 Cir., 163 F.2d 216, certiorari denied 1947, 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386; DiPreta v. United States, 2 Cir., 1920, 270 F. 73.

But there is a distinct and essential difference between this case and those to which we have been referred. In all those cases, the defendant was capable of committing the crime as well as aiding and abetting in its commission. Thus, an indictment against A for mail fraud is valid because it charges a crime, and it is well settled that no fatal variance occurs if only aiding and abetting another in committing mail fraud is proved at trial, since an aider and abettor can be treated as the principal. The theory of this doctrine is sound, because if a grand jury has indicted A for mail fraud, the grand jury has charged a

---

2. "§ 656. Theft, embezzlement, or misapplication by bank officer or employee

"Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets, or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he

shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"As used in this section, the term 'national bank' is synonymous with 'national banking association'; 'member bank' means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and 'insured bank' includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation." 18 U.S.C. § 656.

3. "§ 2. Principals.

"(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." 18 U.S.C. § 2(a).

crime, and the indictment on its face is good.

But here, if the indictments are read as charging Caplan and Tornabene with willful misapplication of bank funds, no federal crime is charged. They alone cannot violate Section 656, as it is not alleged that they were members of the designated class under this section.

But, as the appellants concede, the indictment is sufficient if it charges them with aiding and abetting a bank official in committing the crime. This brings us to the second government theory— namely, that the indictments are sufficient because they adequately charge appellants with aiding and abetting under Section 2(a).

■ An indictment is not sufficient unless it charges all essential elements of a crime. Essential to the crime of aiding and abetting a bank official in violating Section 656 is the guilt of the bank official. See United States v. Pyle, S.D.Cal.1921, 279 F. 290, 293. Without this element, there is no crime, so far as the federal government is concerned, for if no designated person who falls within the Section 656 classification has violated the section, then no one can be guilty of aiding and abetting.

■ The indictments involved here do not charge all the essential elements necessary for Caplan and Tornabene to have aided and abetted a bank official. Nowhere in the indictment are the facts set out which would support a charge that Wagner willfully misapplied bank funds. The only statement as to any wrongdoing on Wagner's part is a legal conclusion that Wagner committed an offense against the United States. What the offense was is not stated. Aside from this, nothing in the indictment charges Wagner with any wrongdoing or with a willful misapplication of bank funds. Yet this is an essential ingredient of appellants' alleged crimes, and so must be averred. See United States v. Pyle, 279 F. at pages 295–296; Keliher v. United States, 1 Cir., 1912, 193 F. 8, 11; United States v. Warner, C.C.S.D. N.Y.1886, 26 F. 616.

■ We are aware that liberality is the guide today in testing the sufficiency of an indictment, but this applies to matters of form and not of substance. We cannot dispense with the requirement that the indictment charge all essential ingredients of a crime. See Hagner v. United States, 1932, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861; United States v. Debrow, 1953, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92.

In view of our decision on the indictments, there is no need to consider other alleged errors.

The causes will be remanded to the district court with instructions that the judgments of conviction be vacated and the indictments quashed.